IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

**DONNA N. PARKS,**

        **Petitioner,**

v.                                              **Case No. 1:21-cv-00610**

**A.W. NAPIER,**

        **Respondent.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Petitioner Donna N. Parks's *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, (ECF No. 1), as well as Respondent's request that the petition be dismissed. (ECF No. 7). This matter is assigned to the Honorable David A. Faber, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having thoroughly considered the record, the undersigned determines that Petitioner is clearly not entitled to relief; therefore, the undersigned **RECOMMENDS** that Parks's § 2241 petition, (ECF No. 1), be **DENIED**; that Respondent's request for dismissal, (ECF No. 7), be **GRANTED**; and that this matter be **DISMISSED**, with prejudice, from the docket of the Court.

**I.**     **Factual and Procedural Background**

        **A.**     **Proceedings in the Sentencing Court**

Pursuant to a plea agreement, on May 30, 2018, Parks pled guilty to firearm possession in violation of 18 U.S.C. § 924(g) and § 924(a)(2) in the United States District

1

Court for the Middle District of Georgia ("Sentencing Court"). *United States of America v. Alford et al.*, No. 1:18-cr-00007-LAG-TQL-2 (M.D. Ga. Dec. 17, 2018), ECF Nos. 56, 57. On December 10, 2018, she was sentenced to 82 months imprisonment, to be followed by a term of supervised release. *Id.*, ECF Nos. 84, 85. She unsuccessfully appealed her judgment to the United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit"). *Id.*, ECF Nos. 87, 99, 100.

On several occasions since, Parks has sought release from incarceration. On May 5, 2020, Parks filed her first motion for compassionate release, asking to be sent to home confinement due to safety concerns caused by the spread of COVID-19 in the facility where she was housed at the time, citing her limited criminal history and familial obligations. *Id.*, ECF No. 107. The motion was denied on May 27, 2020, due to Parks's failure to exhaust the administrative remedies available to her in prison. *Id.*, ECF No. 108. She filed her second such motion on July 7, 2020, arguing on a similar basis as her first, followed shortly by an amendment. *Id.*, ECF Nos. 109, 110. The Sentencing Court denied this motion on August 4, 2020, after reviewing the record in Parks's case. *Id.*, ECF No. 111. On August 25, 2020, Parks appealed the denial of her motion to the Eleventh Circuit, who dismissed it on November 4, 2020. *Id.*, ECF Nos. 112, 117. On October 13, 2020, Parks filed both a motion for reconsideration of the denial of her previous compassionate release motion and a new motion for compassionate release on a similar basis to her prior motions. *Id.*, ECF Nos. 115, 116. On December 29, 2020, the Sentencing Court again denied Parks's motion for compassionate release. *Id.*, ECF No. 120.

B.     **Section 2241 Petition**

Parks submitted the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on November 22, 2021, while incarcerated within Federal Prison Camp,

Alderson ("FPC Alderson") in Alderson, West Virginia. (ECF No. 1). Therein, she contends that she meets the criteria to be "processed for home confinement" pursuant to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), and her conviction for illegal firearm possession is a nonviolent offense. (*Id.* at 6–7). She also notes having several medical issues she characterizes as risk factors for COVID-19 and explains that the conditions at FPC Alderson do not allow for proper social distancing. (*Id.* at 7). She next alleges that "Mr. JC Petrucci" contradicted himself by providing her with a different list of requirements for relief under the CARES Act than he provided to another inmate. (*Id.*). She maintains that many inmates at FPC Alderson are "going through the same thing where they meet the factors set out," but the prison "is refusing to process." (*Id.* at 8). She asks the Court to "get the BOP [Federal Bureau of Prisons] to process [her]" under the CARES Act so that she may go home. (*Id.*). She attaches the aforementioned response from J.C. Petrucci, the BOP's Regional Director of the Mid-Atlantic Region, which lists factors used to consider prisoners for release to home confinement. (*Id.* at 16).

On January 6, 2022, Respondent filed a response opposing Parks's petition. (ECF No. 7). Respondent argues that this Court lacks authority to order Parks's release to home confinement. (*Id.* at 3–4). Furthermore, Respondent contends that the BOP rightfully exercised its discretion when it determined that Parks's offense of conviction is violent, thus rendering her ineligible for relief under the CARES Act. (*Id.* at 4–5). As to the discrepancy in the list of factors provided to another inmate, Respondent notes that Parks gives no information about the other inmate's criminal history or other relevant factors, and "there is no evidence to support [her] wholly conclusory statement" that prison staff applied the policy unfairly. (*Id.* at 5 n.3). Thus, Respondent concludes that Parks's petition should be dismissed. (*Id.* at 5).

On January 6, 2022, the undersigned issued an order allowing Parks 60 days to file a reply to Respondent's arguments. (ECF No. 8). The time has since expired and Parks has not provided a reply.

## II. Standard of Review

Respondent does not identify the standard under which he seeks dismissal of Parks's petition; however, Respondent filed the response concurrently with the request for dismissal. Therefore, the request should be treated as a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). A motion for judgment on the pleadings applies the same standard of review as a motion to dismiss filed under Rule 12(b)(6), and both motions may be filed in habeas actions. (*Id.* at 138–39); *see also Martin v. U.S. Parole Comm'n*, No. cv PWG-17-3335, 2018 WL 2135009, at *1 (D. Md. May 9, 2018).

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a federal habeas case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, when resolving the motion without converting it into

a motion for summary judgment. (*Id.*) The court "may also consider documents attached to the complaint ... as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

## III. Discussion

In her petition, Parks presents four arguments styled as grounds for relief: first, her medical history presents a risk of complications due to COVID-19; second, she meets all the criteria provided in a memorandum dated May 8, 2020, from the BOP's Central Office, and her § 922(g) conviction and "enhancements the DA used" to increase her sentence are not violent; third, that the BOP Regional Director J.C. Petrucci "contradicted himself with requirements about CARES Act from one inmate to another," because he provided different criteria for release to another inmate; and fourth, that many inmates at FPC Alderson are "going through the same thing where they meet the factors set out" and that the prison "is refusing to process." (ECF No. 1 at 6–8). Parks is clearly not entitled to relief in this matter, but the undersigned will address all of her arguments in the following analysis.

### A. Request for Release

Parks asks the Court to order her release to home confinement pursuant to the CARES Act because she meets the criteria set forth by the Central Office of the BOP and has medical issues that make her vulnerable to COVID-19. (ECF No. 1 at 6–8). Respondent posits that the Court lacks authority to order Parks's release to home confinement, as that decision rests with the BOP. (ECF No. 7 at 3).

Section 2241 confers "broad authority" on the court to "hear applications for writs of habeas corpus filed by persons claiming to be held 'in custody in violation of the

5

Constitution or laws or treaties of the United States.'" *Timms v. Johns*, 627 F.3d 525, 530 (4th Cir. 2010) (quoting 28 U.S.C. § 2241). "[H]abeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Here, Parks is not challenging the legality of her custody by attacking the validity of her convictions or sentence or suggesting that the BOP has erred in calculating her release date; rather, she asks the Court to order the BOP to process her for release to home confinement because she believes she is eligible based on the factors set forth by the Central Office and she is at a higher risk of complications arising from exposure to COVID-19. (ECF No. 1 at 7–8). Such a claim is not cognizable in a § 2241 habeas petition. Instead, as Parks is seeking release based on the threat posed to her by COVID-19, her request is more properly construed as a petition for compassionate release under the First Step Act. *See Seth v. McDonough,* No. 8:20-CV-01028-PX, 2020 WL 2571168, at *8 (D. Md. May 21, 2020) (concluding that challenges based on possible exposure to COVID-19 could not be brought in § 2241 because they were not challenges to the "fact or duration of confinement"); *see also McCarson v. Reherman*, No. 2:20-01386-HMH-MGB, 2020 WL 2110770, at *2 (D.S.C. May 4, 2020) (finding that request for release under CARES Act not appropriate in a § 2241 petition and instead construing as request for compassionate release and transferring to sentencing court).

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Wirsing*, 943 F.3d 175, 179 (4th Cir. 2019) (quoting 18 U.S.C. § 3582(c)). An exception to this general rule is provided by the compassionate release provision of the First Step Act ("FSA"). *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The FSA provides that a district court "may reduce the term of

6

imprisonment" in certain circumstances. 18 U.S.C. § 3582(c)(1)(A). Nevertheless, Parks's request cannot be examined by this Court. Although Parks is currently incarcerated in the Southern District of West Virginia, compassionate release under § 3582 can only be granted by the court that sentenced her. *See Hill v. Streeval*, No. 7:20-CV-00309, 2020 WL 3065310, at *3 (W.D. Va. June 9, 2020) ("Whether brought under § 3582 or the First Step Act, motions in which a convicted prisoner requests a reduction in his sentence are filed with the *sentencing* court, not with the court in the district where he is incarcerated."); *Hardin v. Acting Warden F.C.I. Edgefield*, No. CV 9:20-1420-SAL-BM, 2020 WL 3259761, at *4 (D.S.C. May 6, 2020), *report and recommendation adopted*, No. 9:20CV1420-HMH-BM, 2020 WL 3259308 (D.S.C. June 16, 2020) (holding that the petitioner's request he be released due to COVID-19 concerns should be filed as a request for compassionate release in the sentencing court).

As noted above, Parks has already sought compassionate release on numerous occasions in the Sentencing Court on the same basis presented in the instant petition. *See United States of America v. Alford et al.*, No. 1:18-cr-00007-LAG-TQL-2 (M.D. Ga. Dec. 17, 2018). That method for obtaining relief is clearly available to Parks though it has so far proved unsuccessful. This Court lacks the power to order her release on the basis of her concerns about her safety due to COVID-19. Thus, the undersigned **FINDS** that to the extent Parks seeks an order requiring the BOP to release her to home confinement, her claim is not cognizable in a § 2241 petition. Insofar as she challenges the basis for the BOP's decision not to transfer her to home confinement, her claims are addressed below.

### B. Criteria for Release to Home Confinement

#### 1. *Classification of § 922(g) conviction as crime of violence*

As an initial matter, the CARES Act did not substantively affect the BOP's authority

to exercise discretion in designating an inmate's place of confinement. The CARES Act provides that "the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" during the period for which the Attorney General has found that emergency conditions affect BOP operations. Pub. L. No. 116-136, § 12003(b)(2). When the emergency period is not in effect, the BOP's discretion is limited by 18 U.S.C. 3624(c)(2), which only allows the BOP to place lower-risk inmates in home confinement for "the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The CARES Act does not limit the BOP's discretion to determine whether an inmate is transferred to home confinement, but rather expands the class of inmates who may be eligible for such transfer.

In determining whether to transfer a prisoner to home confinement, the BOP in part considers whether the prisoner's offense of conviction includes violence. (ECF No. 7-1 at 11). Parks insists that she meets all the criteria because, contrary to the reasoning used by the BOP in denying her administrative remedy, her conviction is for a nonviolent crime. (ECF No. 1 at 7). Respondent disagrees, arguing that, under BOP policy, a conviction under § 922(g) is a violent offense, as are the enhancements Parks received. (ECF No. 7 at 5).

In *Lopez v. Davis*, the Supreme Court of the United States ("Supreme Court") upheld the BOP's reliance on its categorization of offenses involving firearms as violent for the purpose of granting discretionary early release. *Lopez v. Davis*, 531 U.S. 230, 244 (2001) ("The [BOP] reasonably concluded that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early release decision."). The BOP classifies conviction under § 922(g) as a crime of violence. (ECF No.

8

7-1 at 37–40). Here, where the BOP uses its own definitions in exercise of its discretionary placement of prisoners, the BOP is properly exercising its authority. *See Lawrence v. Wilson*, No. 2:18-CV-63, 2018 WL 7078675, at *4 (E.D. Va. Nov. 15, 2018), *report and recommendation adopted*, No. 2:18CV63, 2019 WL 267718 (E.D. Va. Jan. 17, 2019) ("[T]he BOP is well within its authority to utilize Policy Statement 5162.05 to categorize § 922(g) as a crime of violence and the BOP is not required to consider characteristics of the offense or sentencing factors in determining that § 922(g) is a crime of violence.") (citing *Pelissero v. Thompson*, 170 F.3d 442, 447 (4th Cir. 1999)). Thus, the undersigned **FINDS** that Parks's argument that the BOP improperly denied her request to be placed on home confinement on the basis that her underlying conviction is not one of violence is unavailing.

### 2. *Use of contradicting lists of criteria*

Parks argues that, in response to an appeal to the Regional Office, BOP officials provided another inmate with a list of criteria used to consider inmates for placement on home confinement, but that Parks's appeal was denied despite her fulfillment of the criteria. (ECF No. 1 at 7). She notes that she brought this to the attention of the Central Office in her appeal, claiming that BOP officials are "picking and choosing who they release" even when the factors provided by the BOP are met. (*Id.* at 3–4). Respondent disputes the relevance of the document provided to the other inmate because Parks provided no information about that inmate's offense of conviction or other characteristics and thus offers no support for the notion that the policy is being unfairly or unevenly applied. (ECF No. 7 at 5 n.3). As a *pro se* petitioner, Parks's claim is liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Under a broad reading of her petition, the undersigned **FINDS** that Parks is challenging the BOP's reliance on supposedly

contradictory criteria among different inmates on equal protection principles. However, she is clearly not entitled to relief on this basis as the undersigned will briefly explain.

The Equal Protection Clause provides that "[n]o state shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV., § 1. The Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (internal quotation marks omitted). The Equal Protection clause also applies to actions taken by the federal government via the 5th Amendment to the United States Constitution. *Boiling v. Sharpe*, 347 U.S. 497 (1954). To succeed on an equal protection claim, Parks must first demonstrate that she has been treated differently from others with whom she is similarly situated. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

Parks's claim must fail because she makes no attempt whatsoever to show that she and the other inmate had similar offenses or other similar characteristics. As discussed above, the BOP permissibly considers a § 922(g) conviction to be a violent offense. The Regional Director's July 8, 2021 response to the other inmate listed the factors the BOP considers in making home confinement assessments, including its rule that "the primary offense is not violent." (ECF No. 1 at 16). The other inmate was encouraged to seek reconsideration of her suitability, implying that the other inmate qualified for review for home confinement. (*Id.*). In the Regional Director's July 30, 2021 response to Parks's appeal, however, the Regional Director denied Parks relief on the basis that her offense of conviction made her ineligible. (*Id.* at 14).

Parks does not provide any allegations or evidence that the other inmate was told she qualified for relief despite having also been convicted of an offense under § 922(g); thus, there is no indication that she and the other inmate were similarly situated. *See*

10

*Meeks v. Bolster*, No. 3:18CV815, 2020 WL 877985, at *9 (E.D. Va. Jan. 24, 2020), *report and recommendation adopted*, No. 3:18CV815, 2020 WL 877984 (E.D. Va. Feb. 21, 2020) ("Because Meeks fails to demonstrate that he is similarly situated to other prisoners with the same convictions who were treated differently with regard to RDAP early release, this alone forecloses Meeks's equal protection claim."); *Woodson v. Zickefoose*, No. CIV.A. 11-292 RMB, 2011 WL 4352319, at *7 (D.N.J. Sept. 16, 2011). If Parks wishes to challenge this policy as a violation of the equal protection clause, she must show that the policy treats similarly situated inmates differently, not that inmates in differing circumstances are treated differently. Because she makes no such assertion and offers no evidence supporting a difference in treatment between similarly situated inmates, the undersigned **FINDS** that her claim on this basis should be denied as it is without merit.

### C. FCP Alderson Fails To "Process" Inmates

Finally, Parks contends that "many" of the inmates at FPC Alderson are going through the same situation where they meet the release criteria but are not being processed by the facility. Although Parks was asked to provide supporting facts for this ground, she failed to do so. (ECF No. 1 at 8). Instead, she referred to a district court case involving another BOP facility in a different state, which allegedly had the issue "taken out of the BOP's hand." (*Id.*) (citing *Torres v. Milusnic,* 472 F. Supp. 3d. 713 (C.D. Cal. 2020)).

Parks's argument is unpersuasive, as *Torres* is fact-specific, is not controlling in this district, and is not applicable to the instant habeas petition. In *Torres,* inmates at FCI ("Federal Correctional Institution") Lompoc and United States Penitentiary ("USP") Lompoc in Santa Barbara, California initiated a proceeding in the United States District Court claiming that the correctional facilities were subjecting them to unconstitutional

conditions of confinement. 472 F. Supp. 3d. at 718. The matter was before the District Court on a motion for injunctive relief. The inmates argued that their efforts to seek compassionate release and review for home confinement were being ignored by the facilities, even though the inmates had underlying medical conditions that put them at higher risk for contracting COVID-19 and having more serious complications. At the time, the facilities were experiencing significant rates of infection.

Relying on the specific facts of the case, the district court agreed that the facilities were not giving due consideration to the impact of COVID-19 on their inmate populations, and of the health status of inmates, and were not assessing requests for release as thoroughly and as promptly as they should. Because the record before the district court failed to show how, when, and if the facilities had processed requests for release, the court ultimately ordered FCI Lompoc and USP Lompoc to, *inter alia,* (1) prepare a list of inmates with certain medical conditions, providing information about their sentencing court, their requests for compassionate release, and whether they had been reviewed for home confinement; (2) notify inmates being considered for home confinement so a release plan could be prepared; (3) evaluate each inmate on the list for eligibility for home confinement under the CARES Act, take into account their health status, to advise as to their eligibility, and to explain denials; and (4) provide the district court with information regarding the criteria for compassionate release used by the facilities and provide the inmates with decisions on requests for compassionate release. *Id.* at 746-47. Importantly, the Court did not order that inmates be processed for release to home confinement, and the inmates made clear that they were not seeking such an order. Instead, they simply wanted a process to be implemented to expedite their evaluation for release, which took into account their enhanced risks related to COVID-19, and to receive prompt responses

to their requests for compassionate release. *Id.* at 725.

Here—unlike the inmates in *Torres*—Parks requested release to home confinement, received an evaluation of her suitability for such release that included consideration of her health status, and was provided with an explanation for the BOP's denial of her request. (ECF No. 1 at 11-16). She now essentially seeks an order from this Court overruling the BOP's assessment and denial, and releasing her to home confinement. As explained in detail above, this is something the Court cannot do. Parks has not provided any evidence to support a claim that FPC Alderson is failing to promptly evaluate inmates for release and provide an explanation for denials of release. Therefore, the undersigned **FINDS** no factual basis to support this ground for relief.

## IV.   Proposal and Recommendations

For the aforementioned reasons, the undersigned respectfully **PROPOSES that** Parks's § 2241 petition, (ECF No. 1), be **DENIED**; that Respondent's request for dismissal, (ECF No. 7), be **GRANTED**; and that this matter be **DISMISSED**, with prejudice, from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge

for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Faber, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Petitioner and counsel of record.

**FILED:** May 6, 2022

_____
Cheryl A. Eifert
United States Magistrate Judge